Judson v. Zurhorst.

## INJUNCTION—LIBEL AND SLANDER.

[Erie (6th) Circuit Court, April 8, 1907.]

Haynes, Wildman and Hurin, JJ.

(Judge Hurin, of the third circuit, sitting in place of Judge Parker.)

CHARLES A. JUDSON v. EDMUND ZURHORST.

LIBEL CANNOT BE ENJOINED.

A court of chancery has no jurisdiction to restrain the publication of a lewd, obscene and lascivious pamphlet merely because it is libel, and will injure plaintiff in his reputation and cause the public to believe he is unfit to hold office.

[Syllabus approved by the court.]

ERROR to Erie common pleas court.

H. L. Peeke, for plaintiff in error.
H. C. De Ran, for defendant in error.

HURIN, J.

The sole question before this court is:

"Has a court of equity power to enjoin a threatened libel, when—as in the case at bar—it is alleged that the pamphlet whose printing and circulation is sought to be enjoined, is false and untrue and is of an obscene, lewd and lascivious character, known to be such by the defendant, and tending to corrupt the morals of the community and that its publication will irreparably injure the complainant in his reputation, official position and property rights, for which injury he has no adequate remedy at law, there being no way of stopping the circulation of said circulars when once commenced and the defendant being utterly insolvent and a judgment against him uncollectible."

This question is raised by demurrer to the second amended petition, defendant objecting especially to the jurisdiction of the court over the subject-matter and that the petition fails to state a cause of action.

The defense is based on the constitutional protection of freedom of speech and of the press.

Article 1, Sec. 11 of the Ohio constitution declares that:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives, and for justifiable ends, the party shall be acquitted."

Erie County.

It is clear that the constitution here provides for the fullest liberty of speech, but subject always to the proviso that every citizen must be held responsible for his abuse of the right.

The defendant claims that this responsibility extends only to the criminal liability referred to in the latter part of Sec. 11, and to the civil liability to respond in damages for the abuse of the right of free speech.

Plaintiff, however, claims that this responsibility goes further, and includes the liability to be shut off from a future abuse of that right, where it is shown that such future abuse is contemplated, and that neither a criminal action nor a suit in damages will adequately protect a complainant or compensate him for the threatened wrong. He therefore asks an injunction restraining defendant from such abuse.

The question appears to be a somewhat novel one in Ohio, never authoritatively settled by the Supreme Court.

In other states, the great preponderance of authority is against the power of courts to restrain threatened libels and the same may be said of the restraint of threatened crimes. For both libel and crime are supposed to be so guarded by other forms of procedure that courts of equity will not assume the unnecessary prerogative of forestalling and preventing their commission. Yet the courts and legal authorities are by no means unanimous in repudiating this prerogative. In England, the courts for a long time refused to assume such power, though occasionally a chancellor hinted at his right to do so. Now, by reason of powers specially conferred by statute and, independently of statute, by reason of a broader view of the subject the English courts do restrain the publication of libelous matter and especially when property rights are involved.

In this country the older English rule was formerly universal, but in recent years, the courts have shown a tendency to break away from it and to assume the power to prevent injuries at least to property by libelous publications, though usually giving other reasons than that of the mere libel in support of their decrees.

So great an authority as Story, in 2 Story, Eq. Jurisp. Sec. 948a, said: Courts "have never assumed, at least since the destruction of the court of Star Chamber, to restrain any publication which purports to be a literary work, upon the mere ground that it is of a libelous character, and tends to the degradation or injury of the reputation or business of the plaintiff, who seeks relief against such publication. For matters of this sort do not properly fall within the jurisdiction of courts of equity to redress, but are cognizable in a civil or criminal suit at law."

Judson v. Zurhorst.

And 6 Pomeroy, Equity Jurisp. Sec. 629, says:

"A libel occupies much the same relative position as a crime in considering the remedy of injunction: Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may appear to be. This is the universal rule in the United States, and was formerly the rule in England. The present rule in England contra, rests on statute."

But in Sec. 630, the same author says:

"But while the libel as such will not be restrained, just as a crime will not be prevented by equity, yet when there is other legitimate ground for equity to issue the injunction the fact that the publication is also a libel will not prevent the injunction's being issued, even if there is a constitutional provision forbidding injunction against libels, as an interference with the right of free speech."

And in support of this doctrine the author cites *Beck* v. *Protective Union*, 118 Mich. 497 [77 N. W. Rep. 13; 42 L. R. A. 407; 74 Am. St. Rep. 421], where the court says:

"It is urged that courts of equity will not restrain the publication of a libel, and that this boycotting circular is a libel, the publication and circulation of which cannot be enjoined. The same claim was made that courts of equity have no jurisdiction to restrain the commission of a crime. But the answer is, and always has been, that parties cannot interpose this defense when the acts are accompanied by threats, express or covert, or intimidation and coercion, and the accomplishment of the purpose will result in irreparable injury to, and the destruction of, property rights. * * * Its purpose" (this libelous circular) "was not alone to libel complainant's business, but to use it for the purpose of intimidating and preventing the public from trading with the complainants. It called upon them to protect them."

And so for other reasons libelous publications have been enjoined, as in *Emach* v. *Kane*, 34 Fed. Rep. 46, where one manufacturer was enjoined from sending out circulars to customers of another, threatening them with litigation, tending to intimidate them and prevent their dealing with plaintiff.

See also *Farquhar Co.* v. *Harrow Co.* 102 Fed. Rep. 714, [42 C. C. A. 509; 49 L. R. A. 755], where the bad faith of defendant in sending out damaging circulars regarding plaintiff's business was one element leading to the granting of the injunction. Pomeroy cites Lord Cairns' statement in the case of *Prudential Assur. Co.* v. *Knott*, 10 Ch. App. 142, which is perhaps the clearest statement of the rule that can be found. It was announced in a case decided in 1874 before the change in the statutes of England, and is as follows:

Erie County.

"It is clearly settled that a court of chancery has no jurisdiction to restrain the publication merely because it is a libel. There are publications which a court of chancery will restrain, and those publications as to which there is a foundation for the jurisdiction of the court to restrain them, will not be restrained the less because they happen also to be libelous."

This may fairly be said to be the rule followed by the vast majority of the courts of this country.

We are thus led to inquire whether there is anything in the libel complained of in the case at bar which—aside from its libelous character—justifies the interposition of a court of equity.

We have seen that courts have found publications containing various forms of intimidation proper subjects for the exercise of injunction power. Threats of the boycott and threats of litigation, circulated by means of pamphlets have been thus enjoined, not because the statements of the pamphlets were false or libelous and not merely because they tended to injure plaintiff in his business, but because they tended to intimidate others and prevent them, through fear, from dealing with complainants, thus interfering with the rights of the public to freedom of choice in dealing with plaintiff and interfering with plaintiff's right to the benefit of that freedom of choice. And so where officers of a trades union gave notice to workmen by means of placards and advertisements that they were not to hire themselves to plaintiffs, pending a suit between the union and the plaintiffs, it was held, upon demurrer, that the acts of the defendants as alleged by the bill, amounted to crime, and that the court would interfere by injunction to restrain such acts, inasmuch as they also tended to the destruction or deterioration of property. *Springhead Spin. Co.* v. *Riley,* L. R. 6 Eq. 551; *Consolidated Steel & Wire Co.* v. *Murray,* 10 O. F. D. 205 [80 Fed. Rep. 811]; *Debs, In re,* 158 U. S. 564 [15 Sup. Ct. Rep. 900; 39 L. Ed. 1092].

But in the case at bar, no such claim is made.

Plaintiff does say in his petition that he is a public office holder and enjoys a property right in the emoluments of his office and that the circulation of the pamphlet complained of, is an injury to the reputation of plaintiff and to his property rights in said office by causing people to believe that he is unfit to hold said office.

But here we find no allegation that people are intimidated or in any other way prevented from dealing with him in his said office, or even that his tenure of said office is threatened or likely to be interfered with because of defendant's acts. The charge thus made is in effect merely another form of the statement that plaintiff's reputation will be injuriously affected by defendant's circulation of said pamphlet. In

Judson v. Zurhorst.

reality, there is no allegation that the property rights of plaintiff will be at all interfered with, but only that people will believe that he is unworthy of enjoying them.

No destruction or deterioration of these property rights is even suggested in the pleadings of plaintiff. He fails to bring his case within any of the rules laid down in any of the cases so far referred to.

The only other ground on which irreparable injury to plaintiff himself is claimed is that of damage to his reputation by reason of the fact that this obscene, lewd and lascivious pamphlet will injure him in his reputation and cause the public to believe that he is unfit to hold office.

It is argued by counsel for plaintiff, and with great plausibility, that, when the obscene character of the pamphlet is known, plaintiff ought not to be compelled to sit still and allow such a thing to be published concerning him and trust to the doubtful result of an action for damages to reimburse him in money for an injury to his reputation for which no money judgment can ever compensate him, and for which no punishment, which, under the criminal law, can be inflicted on the defendant, can ever sufficiently atone. There is much reason and sound sense in this statement of the case.

Were we empowered to formulate original principles of law and lay down new rules by which courts of equity should be guided, such an argument would appeal strongly to our consciences and judgment. But we have no such power. We must be guided solely by principles already enunciated and accepted as sound by courts generally throughout this country and in England.

It may be admitted at once that no self-respecting man would willingly suffer his reputation for morality to be sullied for any amount of money damages, even though such amount were assured him. From an ethical standpoint the action for damages is never an adequate remedy in such cases, yet it is the only way known to the law for compensating a man for an injury done him, and in a legal sense it is and must be considered an adequate remedy where available at all.

The criminal punishment of the offender has another purpose than compensation, but it would not necessarily follow that because this kind of a remedy is open to defendant for an injury already done, he is therefore without the right to prevent future injuries of like character. The difficulty is to find some authoritative case where a court of equity has in this country exercised the power of preventing such injuries— that is, to the reputation of an individual.

A somewhat extended search has failed to disclose such a precedent and in the absence both of statute and of precedent, this court is not at

Erie County.

liberty to assume a power whose exercise would be of such far-reaching consequences.

While it is plaintiff's misfortune that defendant is not responsible financially and therefore cannot be made to respond in damages even should a verdict be obtained against him; yet, if the injunction power is not applicable to an injury of this kind generally, the mere insolvency of the defendant will hardly afford a judicial reason for its arbitrary exercise.

There remains one contention for the granting of this injunction on the facts alleged in the petition. That is on the alleged indecency of the pamphlet. The law does not favor obscenity or indecency.

In a proper case instituted by one legally authorized to represent the public, the public exhibition of lewd pictures, immodest statuary, or immoral plays, would unquestionably be enjoined, or otherwise suppressed; and for the same reason an obscene book or pamphlet is prohibited transit through the United States mails. The case presented to us, however, is not of that character and does not authorize the relief sought.

For these reasons the demurrer to the second amended petition should be sustained.

**Haynes** and **Wildman, JJ.,** concur.